UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNADETTE ERIKSEN,

    Plaintiff,

v.                                                                                          Case No. 06-13549
                                                                                            Honorable Patrick J. Duggan
ALLIED WASTE SYSTEMS, INC. and
BFI WASTE SYSTEMS OF NORTH
AMERICA, INC.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on April 2, 2007.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                       U.S. DISTRICT COURT JUDGE

On July 19, 2006, Plaintiff filed this lawsuit against Defendants in the Monroe County Circuit Court, State of Michigan, alleging violations of the Michigan Elliott-Larsen Civil Rights Act ("MELCRA"), MICH. COMP. LAWS ANN. §§ 37.2102-37.2804. Specifically, Plaintiff alleges that she was subjected to a hostile work environment as a result of a co-worker's comments regarding her national origin and she claims retaliation for complaining about the co-worker's conduct. Defendants removed Plaintiff's complaint to federal court based on diversity jurisdiction on August 8, 2006. *See* 28 U.S.C. §§ 1332 & 1441. Presently before the Court is Defendants' motion for summary

judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, filed January 15, 2007. Plaintiff filed a response to Defendants' motion on February 5, 2007; Defendants filed a reply on February 12, 2007. The Court held a hearing on the motion on March 15, 2007.

**I.      Factual Background**

Plaintiff commenced employment with Defendants as a "growth sales representative" on December 8, 2003.[1] Defendants' sales manager, Greg Stalter ("Stalter"), hired Plaintiff and initially was her supervisor. Shortly after Plaintiff's employment began, Terri Sass ("Sass") took over as sales manager and became Plaintiff's supervisor.

In February 2005, Plaintiff asked to be transferred to a "relationship sales representative" position. Although initially opposing Plaintiff's request, Sass eventually transferred Plaintiff to the relationship sales representative position on February 21, 2005. The position was considered a promotion for Plaintiff and resulted in a significant increase in her salary. Sass continued to serve as Plaintiff's supervisor in the new position. In early 2006, Sass was promoted to the position of district sales manager and Greg Oberle ("Oberle") took over Sass's position.

According to Defendants, on March 13, 2006, Rob Horvath, the chief operating

---

[1] Defendants, which are affiliated companies, maintain that a question exists as to which company employed Plaintiff. *See* Defs.' Mot. at 1. Nevertheless, for purposes of the motion, Defendants assume that each company was Plaintiff's employer. *See id.*

officer of Tony Packo's, a customer of Defendants, called and threatened to cancel Tony Packo's accounts with Defendants because of conduct by Plaintiff. That evening or in the following days, Oberle visited Horvath in order to save the account. According to Oberle, during their meeting Horvath claimed that Plaintiff attempted to get one of Horvath's subordinates to sign a 5-year agreement by falsely representing that Horvath had authorized the contract, lied to Horvath concerning the reason she failed to appear for a meeting with him, and threatened him with either litigation or disruption of family relationships unless he did business with Defendants. Based on Horvath's complaint, Oberle discharged Plaintiff for misconduct, dishonesty, and misrepresentation on March 16, 2007.

Plaintiff claims that throughout her employment she endured profane and derogatory comments related to her national origin, Native American, from a co-worker, Mike Nicholson ("Nicholson"). Plaintiff complained verbally to Statler and Sass, and she claims that she also told Oberle about Nicholson's conduct prior to her termination. Plaintiff complained about Nicholson in writing on only one occasion, when she sent an e-mail to Sass, at Sass's request, on April 11, 2005.

After receiving Plaintiff's e-mail, Sass spoke with Defendants' general manager Ross Scherzer, Nicholson, and Rick Fox (one of Plaintiff's co-workers). Sass did not interview Plaintiff, explaining at her deposition that she did not do so because she believes Plaintiff is a "complainer." *See* Pl.'s Resp. Ex. G at 51. Fox confirmed that Nicholson had made improper comments to Plaintiff. *See id*. Ex. H. Nicholson admitted

making certain comments to Plaintiff; however Nicholson told Sass that Plaintiff also made derogatory comments to him.  *See id*.  Based on her "investigation," Sass instructed Nicholson to act professionally.  *See id*.

## II.     Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact."  *Id.* at 323.  Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable

4

inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant."  *See id.*

### III.     Applicable Law and Analysis

Defendants seek summary judgment with respect to Plaintiff's hostile work environment claim and her retaliation claim. With regard to her hostile work environment claim, Defendants argue that Plaintiff fails to establish that she is Native American.[2] With regard to Plaintiff's retaliation claim, Defendants contend that there is no genuine issue of material fact that Oberle was the individual who decided to terminate Plaintiff and that he was unaware of Plaintiff's protected conduct– i.e. her complaints regarding Nicholson. Defendants further contend that Plaintiff cannot establish a causal connection between her complaints and her termination.

---

[2]In their reply brief, Defendants also argue that Plaintiff also cannot demonstrate that Nicholson's conduct substantially interfered with her employment. *See* Defs.' Reply Br. at 3. Defendants did not present this argument in their initial motion. As a result, Plaintiff has not had the opportunity to respond and present evidence, if any exists, to support this prong of her prima facie case. "[I]t is well-settled that a party may not raise new issues for the first time in a reply brief." *Resolution Trust Corp. v. Townsend Assoc. Ltd. P'ship*, 840 F. Supp. 1127, 1142 n.15 (E.D. Mich. 1993)(citing *United States v. Jerkins*, 871 F.2d 598, 602 n.3 (6th Cir. 1989)).

**A.    Plaintiff's Hostile Work Environment Claim**

To establish a claim alleging hostile work environment under the MELCRA, a plaintiff must show that: (1) she belongs to a protected group; (2) she was subject to communication or conduct on the basis of her membership in the protected group; (3) the conduct or communication was unwelcome; (4) the conduct or communication was intended to or in fact did substantially interfere with her employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. *Haynie v. Michigan Dep't of State Police*, 468 Mich. 302, 308, 664 N.W.2d 129, 133 (2003) (citations omitted).  Again, it is Plaintiff's ability to satisfy the first prong that Defendants challenge.

Plaintiff alleges that she is a member of a protected group based on her national origin, Native American.  There is little state and federal law guiding this Court in deciding how to define who is a Native American and in determining what proof Plaintiff must present to demonstrate her status in this protected group.[3]  However with respect to a plaintiff's burden at the prima facie stage in general, the Sixth Circuit has instructed that "[t]he burden of establishing a prima facie case is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (2000)(citing *EEOC v. Avery Denison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)).

---

[3] Notably, except for stating that "national origin includes the national origin of an ancestor," the term "national origin" is not defined in the MELCRA.  *See* MICH. COMP. LAWS ANN. § 37.2103(f).  The term also is not defined in Title VII of The Civil Rights Act of 1964.  *See* 42 U.S.C. § 2000e.

Defendants argue that Plaintiff is not a Native American because neither she nor any member of her family has been certified as a member of a Native American tribe, recognized as a member on any tribal registry, or otherwise recognized as a member of any tribe and she lacks documentary or tangible evidence to substantiate family stories that she is descended from Native Americans. Relying on *Becker v. Federal Express Corp.*, No. 94-CV-117, 1996 U.S. District LEXIS 971 (W.D. Mich. Jan. 11, 1996) and *Brewer v. Hill*, No. 208872, 2000 Mich. App. LEXIS 1033 (Sept. 15, 2000)– both unpublished decisions– Defendants contend that a plaintiff alleging national origin discrimination must demonstrate his or her national origin through documentary or other tangible evidence. This Court does not read *Becker* or *Brewer* as holding that such proof always is necessary. Furthermore, the Court finds that both opinions define the class of individuals qualifying as Native Americans too narrowly.

According to the district court in *Becker*, the only proof the plaintiff offered to show that she was a Native American in that case were "her self serving assertions that 'my dad had told me that I was part Native American,' and that her father and maternal relatives . . . called her 'little squaw' at family reunions." 1996 U.S. Dist. LEXIS 971, at *5. The court found the plaintiff's proof as to what her maternal relatives called her inadmissible hearsay and concluded that the remaining statements were insufficient to prove her Native American status. *Id.* While the court further noted that the plaintiff had been unable to document her heritage, failed to suggest any percentage of Indian blood, and offered "no proof . . . that she has been recognized by anybody as a Native American

7

belonging to any tribe," *see id.* at 6-7, the court in no way held or suggested that such evidence is the only means for a plaintiff to establish his or her Native American status.

In *Brewer*, the Michigan Court of Appeals explicitly refrained from deciding whether the plaintiff offered sufficient proof to demonstrate his Native American status, finding that he did not establish that he was discriminated against *because of* his race. 2000 Mich. App. LEXIS 1033, at *18-19. Although the court did note that it questioned the sufficiency of the plaintiff's proof, the court failed to decide whether that proof was sufficient and it did not address what proof is necessary for a plaintiff to demonstrate his or her Native American status. *See id.* Additionally, the only proof offered in *Brewer* was the plaintiff's testimony that his great, great-grandmother was "predominantly" Indian and an affidavit from the plaintiff's uncle who claimed that the plaintiff's great-grandmother was known to be part Indian. In the present case, Plaintiff offers substantially more evidence to demonstrate that she is Native American.

As indicated previously, the Court also finds that the courts in *Brewer* and *Becker* adopted too narrow a definition of who is a Native American. For example, the *Becker* court adopted the definition provided by Congress in the Indian Reorganization Act of 1934, which includes as "Indians":

> "(1) all persons of Indian descent who are now members of a recognized Indian tribe now under Federal jurisdiction; (2) descendants of tribe members who resided on a reservation on June 1, 1934, and (3) 'all other persons of one-half or more Indian blood.'"

*Becker*, 1996 U.S. Dist. LEXIS 971, at *7 (quoting 25 U.S.C. § 479). In comparison,

8

those courts actually analyzing what definition to adopt and deciding whether the plaintiff demonstrated his or her status as a Native American found support for a far broader definition that considers particularly relevant the plaintiff's outward characteristics. *See, e.g., Bennun v. Rutgers State Univ.*, 941 F.2d 154, 173 (3d Cir. 1991)(concluding that ". . . unlawful discrimination must be based on [the plaintiff's] objective appearance to others, not his subjective feeling about his own ethnicity"); *Kanaji v. Children's Hosp. of Philadelphia*, 276 F. Supp. 2d 399, 401-04 (E.D. Pa. 2003)(concluding "that the term 'national origin' must embrace a broader class of people [than simply the country where a person is born or from where his or her ancestors came], and that the term is better understood by reference to certain traits or characteristics that can be linked to one's place of origin . . ."); *Perkins v. Lake County Dep't of Utilities*, 860 F. Supp. 1262 (N.D. Ohio 1994)(finding sufficient proof of the plaintiff's American Indian status based on "his employer's belief in his status as an American Indian, . . . his apparent physical resemblance to Native Americans and his family's belief in and propagation of his Indian heritage"). In *Kanaji*, the District Court for the Eastern District of Pennsylvania provided the following reason for focusing on the plaintiff's objective characteristics:

> Difference in dress, language, accent and custom associated with a non-American origin are more likely to elicit prejudicial attitudes than the fact of the origin itself. An individual's speech, dress, and mannerisms are his present; his ancestral origin is his past. Only through the medium of characteristics does ancestral origin become apparent in the present.

276 F. Supp. 2d at 402 (citing Stephen M. Cutler, *A Trait-Based Approach to National*

9

*Origin Claims Under Title VII*, 94 Yale L.J. 1164, 1165 & n.5 (1985)).  Also believing that discrimination generally is triggered by a person's physical or behavioral traits, the Third Circuit concluded that such traits should be considered in determining whether the person can demonstrate his or her national origin:

> Discrimination stems from a reliance on immaterial outward appearances that stereotype an individual with imagined, usually undesirable, characteristics thought to be common to members of the group that shares these superficial traits.  It results in stubborn refusal to judge a person on his merits as a human being.  Our various statutes against discrimination express the policy that this refusal to judge people who belong to various, particularly disadvantaged, groups is too costly to be tolerated in a society committed to equal individual liberty and opportunity.

*Bennun*, 941 F.2d at 173.

The policy behind anti-discrimination statutes to which the Third Circuit referred in the above passage led one court to conclude that the class of individuals qualifying as Native Americans for purposes of national origin discrimination statutes should be broader than the class for entitlement statutes or other non-discrimination statutes, such as the Indian Reorganization Act to which the *Becker* court referred.  *Perkins*, 860 F. Supp. at 1275-76.  The *Perkins* court reasoned:

> Because of th[e] historical relationship between the United States and American Indians a substantial amount of legislation has developed which is unique to Indians and Indian tribes.  Such legislation generally distinguishes Native Americans from other Americans for purposes of application of particular rules, because the United States government has determined that American Indians have unique historical standing which places them outside certain legislative

10

> schemes applicable to other United States citizens. Indian legislation dissimilates, rather than assimilates, and, therefore, it is necessary to objectively define what individual or tribe falls under the auspices of any such particular law.
>
> Title VII has an entirely different purpose. Title VII does not single out Indians for special benefits or treatment, but, rather, attempts to equalize the position of all employees, be they Native American, African-American, Hispanic, Asian or white. The statute addresses perceived differences which do not have a basis in fact between races and ethnic groups. For example, when bringing an action under Title VII African-Americans do not have to demonstrate that their relatives lived in Africa, or that they visit the site of their roots, or that they are involved in any kind of cultural activities associated with Africa. They only have to appear to be African-Americans to be deemed members of that protected class.
>
> It is because Title VII is in force to equalize rather than separate that this Court finds that membership in a given protected class carries a lower threshold of proof than would be the case under entitlement legislation.

*Id*.[4] Therefore the court in *Perkins* found a genuine issue of material fact with respect to whether the plaintiff was Native American, even though the evidence suggested that neither the plaintiff nor his immediate family were members of any tribe, lived in an Indian community, or participated in Indian cultural events. *Id*. at 1276. Specifically, the court found evidence that the plaintiff had the physical appearance of an Indian, he believed himself to be an Indian and had represented himself as such, and the defendants apparently believed him to be an Indian. *Id*.

---

[4]Also relevant to Defendants' argument in this case, by tracing the history of racial categorization in the United States, the *Perkins* court found that it often is difficult to present documentary proof of one's national origin.

Finally, there is support for a broad definition of the term "national origin" in guidelines promulgated by the Equal Employment Opportunity Commission ("EEOC"). Although the EEOC has not defined "national origin," it has defined "national origin discrimination" as follows:

> The Commission defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; *or* because an individual has the physical, cultural or linguistic characteristics of a national origin group.

29 C.F.R. § 1606.1 (emphasis added). The EEOC Guidelines further provide that proof of national origin discrimination is not based on the actual national origin of the plaintiff, but rather on the perceived characteristics of the plaintiff leading the alleged discriminator to treat the plaintiff differently:

> In order to have a claim of national origin discrimination under Title VII, it is not necessary to show that the alleged discriminator knew the *particular* national origin group to which the complainant belonged. To prove a national origin claim, it is enough to show that the claimant was treated differently than others because of his or her foreign accent, appearance or physical characteristics.

45 Fed. Reg. 85633 (Dec. 29, 1980)(emphasis in original).

With the above considerations in mind, the Court turns to Plaintiff's proof in the present case and concludes that she presents sufficient evidence to raise a genuine issue of material fact as to whether she is or was perceived to be Native American. Plaintiff represented herself as a Native American to her co-workers, including Nicholson. *See*

Pl.'s Resp. Ex. C at 77-78 & 94. Plaintiff also kept pictures of herself dressed in Native American regalia at powwows on her desk, and Nicholson saw those pictures. *See id.* Ex. A at 187. During her employment, Plaintiff participated in Native American social and ceremonial events. *See id.* Ex. D ¶ 3 & Ex. E ¶ 3. Nicholson was aware of at least one occasion when Plaintiff participated in a Native American powwow at a reservation in New York. *See id.* Ex. A at 188. Plaintiff regards herself as slightly under one-half Native American and testified that her belief is based upon the fact that her maternal great, great-grandmother was Blackfoot and Mohawk and her paternal great, great, great-grandfather was a Penobscot Indian in Maine. *See id.* at 197. Importantly, Nicholson indicated during his deposition that he regarded Plaintiff as a Native American. *See* Pl.'s Resp. Ex. C at 94.

### B. Retaliation

In order to prevail on her retaliation claim without direct evidence that her termination was in retaliation for reporting Nicholson's conduct, Plaintiff first must establish a prima facie case of retaliation. *Town v. Mich. Bell Tel. Co.*, 455 Mich. 688, 695, 568 N.W.2d 64, 67-78 (1997). If Plaintiff is able to establish a prima facie case, an inference of discrimination arises. *Town*, 455 Mich. at 695, 568 N.W.2d at 68. In order to rebut this inference, Defendants must present evidence of a legitimate, non-discriminatory reason for Plaintiff's termination. *Id.* If Defendants succeed, Plaintiff must come forward with evidence "sufficient to permit a reasonable factfinder to conclude that the discrimination was [Defendants'] true motive in making the adverse

13

employment decision." *Id*. at 696, 568 N.W.2d at 68.

To demonstrate a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in activity protected by the MELCRA; (2) Defendants were aware of her protected activity; (3) Defendants took an adverse employment action toward Plaintiff; and (4) there was a causal connection between Plaintiff's protected activity and Defendants' employment action. *Garg v. Macomb County Cmty. Mental Health Servs.*, 472 Mich. 263, 273, 696 N.W.2d 646, 653 (2005)(citation omitted). Defendants challenge Plaintiff's ability to satisfy the second prong, contending that Oberle was the only individual involved in the decision to terminate Plaintiff and that he was unaware of her complaints regarding Nicholson. Defendants further challenge Plaintiff's ability to satisfy the fourth prong, arguing that she cannot establish a causal connection between her complaints and her termination.

The Court finds a genuine issue of material fact with respect to whether Sass instructed Oberle to terminate Plaintiff and with respect to whether Oberle was aware of Plaintiff's protected conduct when she was terminated. Defendants assert that Oberle was unaware of Plaintiff's complaints concerning Nicholson at the time of her discharge.[5] *See*

---

[5]The Court notes that Defendants' precise assertion is not supported by the evidence they cite. In the portion of Oberle's deposition to which Defendants refer, Oberle was never asked, nor did he say, that he was unaware of Plaintiff's complaints concerning Nicholson. *See* Defs.' Mot. Ex. 2 at 118. Oberle only was asked whether Plaintiff ever complained to him about Nicholson during the course of his employment and whether any employee ever complained about Nicholson to him. *See id*. To both questions, Oberle simply responded "no." *See id*.

Defs.' Br. in Supp. of Mot. at 11 (citing Ex. 2 at 118). Plaintiff, however, testified during her deposition that she complained about Nicholson directly to Oberle shortly after he became her supervisor. *See* Pl.'s Resp. Ex. A at 120. Moreover, according to Plaintiff, when Oberle terminated her, he said that Sass had instructed him to terminate Plaintiff. *See id*. at 268 & 270. There is no genuine issue of material fact that Sass was aware of Plaintiff's complaints regarding Nicholson's conduct.

With regard to the fourth prong of Plaintiff's prima facie case, the Michigan Supreme Court has held that temporal proximity, alone, is insufficient to establish a causal connection between a plaintiff's protected activity and a defendant's adverse action. *West v. Gen. Motors Corp.*, 469 Mich. 177, 186, 665 N.W.2d. 468, 472-73 (2003)(holding that "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed.") In reaching this decision, however, the Michigan Supreme Court indicated that temporal proximity may be sufficient where there also is evidence that the employer expressed clear displeasure with the protected activity engaged in by the plaintiff. *Id*. at 186-87, 665 N.W.2d at 473 (distinguishing *Henry v. Detroit*, 234 Mich. Ap. 405, 594 N.W.2d. 107 (1999)).

Plaintiff presents evidence to indicate that the longest period of time between her complaints and her termination was two and a half months. There also is evidence that Sass was displeased with Plaintiff's complaints regarding Nicholson's alleged harassment as Sass testified during her deposition that she viewed Plaintiff as a "complainer."

15

Whether this evidence is sufficient to satisfy the fourth prong of Plaintiff's prima facie case is a close question. The Court finds it unnecessary to resolve this issue, however, as it concludes that Defendants present a non-retaliatory reason for Plaintiff's termination and that Plaintiff fails to demonstrate that this reason was pretextual.

According to Defendants' evidence, Oberle terminated Plaintiff in response to Horvath's complaints regarding her conduct. There are three methods available to Plaintiff to rebut this legitimate explanation for her termination. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). She can "'show by a preponderance of the evidence either (1) that the proffered reason[] had no basis *in fact*, (2) that the proffered reason[] did not *actually* motivate [her] discharge, or (3) that [it] w[as] *insufficient* to motivate discharge.'" *Id.* (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)). Relying on the following evidence, Plaintiff attempts to demonstrate pretext through the first and second methods.

First, Plaintiff presents a version of the events involving Horvath and his controller which vary dramatically from Defendants' version. Second, Plaintiff points out that notes taken by Oberle reflect that he learned about Plaintiff's misconduct from Horvath on March 13, 2006, but Oberle only terminated her two days later and he failed to mention Horvath's complaints during a disciplinary meeting with Plaintiff on March 14, 2006. Next Plaintiff relies on the temporal proximity between her complaints regarding Nicholson and her termination. Additionally, Plaintiff relies on the fact that Oberle did not give her an opportunity to respond to Horvath's allegations. Finally Plaintiff points to

Sass' testimony that she believes Plaintiff is a "complainer."

To demonstrate that Defendants' proffered reason has no basis in fact, Plaintiff must show that it never happened, i.e., that it is factually false. *Manzer*, 29 F.3d at 1084. Plaintiff's version of her interactions with Horvath and his controller may explain her conduct or raise a question regarding Horvath's credibility. It does not, however, raise a question of fact as to whether Horvath told Oberle that Plaintiff engaged in the charged misconduct. If Horvath told Oberle that he was going to cancel his contracts with Defendants because Plaintiff lied to him, threatened him, and deceived his controller, it is not for this Court to decide whether Oberle was justified in believing Horvath. It also is not this Court's role to decide whether Oberle should have given Plaintiff a chance to respond to Horvath's allegations. With respect to the date on Oberle's notes reflecting that he spoke with Horvath on March 13, Oberle testified that this date was incorrect and that he actually met with Horvath after he disciplined Plaintiff for not meeting her sales goals. Plaintiff's remaining points do not bear on the truth of Defendants' proffered reason for her termination. Thus the Court finds that Plaintiff fails to show that Defendants' proffered reason has no basis in fact.

Turning to the second method for demonstrating pretext, the Sixth Circuit has provided that the plaintiff must show ". . . that an illegal motivation is *more* likely than that offered by the defendant." *Manzer*, 29 F.3d at 1084 (emphasis in original). Stated differently, the plaintiff must prove that ". . . the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's

17

explanation is a pretext, a coverup." *Id.* According to the Sixth Circuit, in most cases "the bare bones elements of a plaintiff's prima facie case" are insufficient to make this showing and the plaintiff must introduce additional evidence of an illegal motive.[6] *Id.* Otherwise, the court reasoned, "the entire 'burden shifting' analysis of *McDonnell Douglas* and its successors would be illusory." *Id.*

In this case, to prove that retaliation, rather than Horvath's complaints, actually motivated her discharge, Plaintiff relies on the same evidence that she presented to demonstrate her prima facie case. As suggested previously, Plaintiff has not presented a particularly strong case of retaliation in support of her prima facie case. Thus the Court finds that Plaintiff fails to present sufficient evidence to make a submissible case on the credibility of Defendants' explanation for her termination. The Court therefore concludes that Plaintiff has not rebutted Defendants' non-retaliatory explanation for her discharge and that Defendants are entitled to summary judgment with respect to her retaliation claim.

## IV.  Conclusion

In summary, the Court finds that Plaintiff presents sufficient evidence to create a genuine issue of material fact with respect to whether she is or was perceived to be a

---

[6] The Sixth Circuit has indicated that, in some cases where the plaintiff's prima facie case is sufficiently strong to allow a reasonable jury to conclude that the defendant's proffered reason is not the true reason for its action, the prima facie case may be sufficient to establish pretext. *Joostberns v. United Parcel Serv., Inc.*, 166 Fed. Appx. 783, 795 n.7 (6th Cir. 2006)(unpublished opinion).

Native American. As Defendants, in their initial motion, only challenged Plaintiff's ability to satisfy the first prong of her prima facie case to demonstrate that she was subjected to a hostile work environment, the Court denies Defendants' request for summary judgment with respect to this claim. The Court holds, however, that Defendants are entitled to summary judgment with respect to Plaintiff's retaliation claim. Defendants present a legitimate, non-retaliatory motive for Plaintiff's termination and Plaintiff fails to present sufficient evidence to demonstrate that Defendants' proffered reason is false or that Defendants actually were not motivated by this proffered reason.

Accordingly,

**IT IS ORDERED**, that Defendants' motion for summary judgment is **GRANTED**

with respect to Plaintiff's retaliation claim and **DENIED** with respect to Plaintiff's hostile work environment claim.

                                        s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:
John D. Franklin, Esq.
John A. Libby, Esq.